CASE 7.—ACTION BY HENRY C. BRUNER AGAINST THE SEELBACH HOTEL COMPANY FOR PERSONAL INJURIES.—March 24, 1909.

## Bruner v. Seelbach Hotel Co.

Appeal from Jefferson Circuit Court, Common Pleas Branch (Third Division).

MATT O'DOHERTY, Judge.

Judgment for defendants, plaintiff appeals—Affirmed.

1.  Evidence—Admission—Conclusiveness—Effect.—An admission by defendant, in an action for personal injuries caused by the throwing of a bottle from the roof garden of a hotel, that he was the man who threw the bottle is not conclusive, where at the time he first made the admission he was so much intoxicated that he had no distinct recollection of the matter, and must have based his admission upon information given him by others.

2.  Negligence—Actions—Sufficiency of Evidence to Support Verdict.—In an action for personal injuries occasioned by the throwing of a bottle from a roof garden of a hotel, evidence held to support a verdict for defendant.

3.  Appeal and Error—Review—Conclusiveness of Verdict.—A verdict will not be disturbed on appeal unless it is flagrantly against the weight of the evidence.

4. Negligence—Actions—Instructions.—In an action for injuries received in a street by being struck with a bottle that was thrown by W. from the roof garden of a hotel, there was no evidence to show that W. was boisterous, or that he threatened any one, and no evidence from which it could be inferred that he would throw the bottle in question. An instruction as to the liability of the hotel company that if the jury believed that W. threw the bottle from the roof garden, and plaintiff was injured thereby, and if at the time he was intoxicated and his behavior was such as would indicate to a man of average prudence that he might throw a bottle to the street below, and that these facts were known, or by ordinary care could have been known, to the defendant or its agents, then it became the duty of the defendant and its agents to remove W. from the roof garden or otherwise control him, and that the law in that event is for the plaintiff, is not erroneous, as basing the liability of defendant on knowledge rather than on belief or reasonable grounds for belief.

W. O. BRADLEY and J. L. RICHARDSON for appellant.

### CLASSIFICATION OF POINTS AND AUTHORITIES.

1. Instructions given erroneous, because, make liability Seelbach Hotel Company depend on its knowledge, or in the exercise of reasonable care, its knowledge of Wolf's probable conduct. Also for confining its responsibility to the reasonable knowledge that Wolf would throw a bottle or other missile. Also because all responsibility is excluded for negligently maintaining a known dangerous place and business; and because the liability is confined to acts committed by Wolf.

2. The verdict should be set aside because it is against the clear weight of the evidence. (Westbrook v. Potters, &c., 33 K. L. R., 1071.)

O'NEAL & O'NEAL for appellee.

The only parties now before the court are the Seelbach Hotel Company and George Wolf.

The only cause of action stated as against the Seelbach Hotel Company is that Wolf was drunk, boisterous and disorderly and while in that condition threw a bottle over the wall from the roof garden into the street and injured the plaintiff, and that the defendant hotel company, its servants, agents and employes were negligent and careless in maintaining and operating said roof garden.

We submit that this record is utterly barren of any error or even claimed error, so far as the hotel company is concerned.

### AUTHORITIES CITED.

Beale on Innkeepers and Hotels, 118; E. S. Putnam, Admx., v. Broadway and Seventh Ave. R. R. Co., 55 N. Y., 108; Weeks v. McNulty, 43 L. R. A., 186; 11 Am. & Eng. Ency. Law, p. 32; Snyder

v. Colorado Springs, etc., Co., 20 Am. Neg. Reports, 23; Fletcher v. Bal, etc., R. R. Co., 168 U. S., 135; Walton v. N. Y. Central, 139 Mass., 556; McGrath v. Eastern Ry. Co., 77 N. W., 136; Thompson, Vol 5 Commentaries on Law of Neg., 674.

ROBERT J. HAGAN and EDWARDS, OGDEN & PEAK for George Wolf, appellee.

The jury were the proper ones and best capable to judge of the credibility of the witnesses and they decided in favor of appellee George Wolf, and we think that the verdict ought not now to be disturbed.

### LIST OF AUTHORITIES.

Alcorn v. Joseph, 22 Ky. L. R. 1353, 60 S. W., 520; Robertson v. Carrico, 11 Ky. L. R., 441; Thompson v. Thompson, 93 Ky., 435; Banfield v. Burton, 7 B. Monroe, 109; Steele's Heirs v. Logan, 10 Ky. (3 A. K. Marsh), 389; McCoy v. Martin, 34 Ky. (4 Dana), 580; Page v. Carter, 471 Ky. (8 B. Mon.), 192; Miles v. Saunders, 8 Ky. L. R., 689; Heinstein v. Depue, 24 Ky. L. R., 886; McClain v. Esham, 17 B. M., 146; L. & N. R. R. Co., v. Graves, 78 Ky,. 74; Bell v. Keach, 80 Ky., 42; Urso v. Unverzagt, 2 R., 228; Hunt's Heirs v. Hunt, 42 Ky. (3 B. Mon.), 575.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

Plaintiff, Henry C. Bruner, instituted this action against the Seelbach Hotel Company, the Seelbach Realty Company, and George Wolf to recover damages for personal injuries alleged to have resulted from the negligence of defendants. The jury returned a verdict in favor of the Seelbach Hotel Company and George Wolf, and from the judgment based thereon the plaintiff prosecutes this appeal. Plaintiff's grounds for reversal are (1) that the verdict is flagrantly against the weight of the evidence; and (2) that the court erred in its instructions to the jury concerning the liability of the Seelbach Hotel Company.

The petition charges that on the night of July 25, 1907, while plaintiff was standing at or near the intersection of Fourth and Walnut streets, the defendant George Wolf, with gross and wanton carelessness, negligence, and recklessness, and while in

an intoxicated condition, threw a bottle over the wall
of the roof garden conducted and operated by the
Seelbach Hotel Company; that the bottle descended
with great force and rapidity, and struck plaintiff
upon the left shoulder, breaking the blade or bone
thereof, and seriously and permanently injuring him.
The petition further charges that the Seelbach Hotel
Company, its servants, agents, and employes were
negligent and careless in maintaining and operating
said roof garden, and were grossly negligent and
careless in that they did not eject defendant Wolf
from said premises and restrain him in his conduct,
or prevent him from doing the injury complained of;
that immediately prior to the injury George Wolf
was boisterous, disorderly, and quarrelsome, and
that he indulged in dangerous conduct and carousing,
which deportment was known to the Seelbach Hotel
Company, its agents, servants and employes, who
were negligent and careless, in that they did not
eject said defendant Wolf from their premises, or
prevent him from injuring other persons.

The testimony for the plaintiff was to the effect
that he was injured while standing on the corner of
Fourth and Walnut streets. Suddenly a beer bottle
descended and struck him with great force on the
left shoulder. Some facts were stated which would
go to show the probability of the bottle having come
from the roof garden conducted by the Seelbach Hotel
Company. Plaintiff at the time he was injured was
talking to Dr. Ben L. Bruner, his brother. As soon
as plaintiff was struck, Dr. Bruner immediately
rushed up to the roof garden. There he met the
defendant Wolf, and asked him if he threw the bot-
tle. Wolf replied that he did, but he did not mean
any harm by it. Wolf then handed Dr. Bruner his
card with his name, George Wolf, on it. About a
week later Wolf and his wife called on plaintiff at
the Hast building, and Wolf told the plaintiff, in the
presence of the latter's brother, Dr. Ben L. Bruner,

that he threw the bottle, and was sorry for it. The above facts were brought out in the evidence of plaintiff and his brother, Dr. Bruner. Thomas J. Green, a witness for the plaintiff, testified that he was a night watchman of the Seelbach Hotel Company upon the occasion in question, that he was present when the bottle was thrown, and saw defendant Wolf throw the bottle. This witness further testified that Wolf was not boisterous or misbehaving at the time. There was nothing in his manner to indicate any violent or improper conduct towards any one, or that he was going to throw any missiles off the garden, or to do anything of that kind. Wolf was intoxicated at the time. A few minutes later he intercepted one Lew Dale, mistaking him for Wolf. He approached Dale, and said, "Mr. Wolf, I want to know something more about throwing that bottle off the roof," or something to that effect, and Dale answered, "I am not the man." The witness then discovered his mistake when Dr. Roberts came up, and explained that it was not Mr. Wolf. The defendant George Wolf testified that he was intoxicated on the occasion in question, and that he had no recollection of what transpired. He denied emphatically having admitted to plaintiff or Dr. Bruner that he threw the bottle off the roof. His statement was that, if he did throw it, he was sorry for it. Some three or four witnesses who were with Dale testified that, when Green intercepted Dale, Green insisted that Dale was the man who had thrown the bottle of beer. It required several minutes and the testimony of various witnesses to convince Green that he was mistaken in this regard. Other witnesses testified that they were present on the roof garden at or about the time it is charged the bottle was thrown, and that they never saw Wolf throw it. There was also testimony to the effect that Wolf and his companion were sitting together at the table, that they never drank any bottled beer at all, but were drink-

ing draught beer, which was served in glasses.

Taking as true the statement of the plaintiff and his brother, Dr. Bruner, to the effect that the defendant Wolf stated that he threw the bottle in question, it is manifest from the whole record that Wolf was very much intoxicated at the time, and had no distinct recollection of the matter. If he did make the statement, he must have made it upon information given him by others. That being the case, Wolf's statement that he had thrown the bottle would not neecssarily be conclusive of the fact. Furthermore, even according to Green's statement, he mistook Dale for Wolf within a few minutes after the occurrence took place. This fact alone was sufficient to raise in the minds of the jury a doubt as to his identification of Wolf as the man who threw the bottle. According to the testimony of defendant's witnesses, it was not a case merely of mistaken identity, but Green actually charged Dale with having thrown the bottle. Several witnesses who claimed that they were in position to see and were watching Wolf testified that he did not throw the bottle. Others said that he was not drinking bottled beer, but the beer which he drank was served him in glasses. Wolf's liability depended upon the sole question whether or not he threw the bottle. This issue was presented to the jury in the instructions, which are not subject to criticism. The jury heard the evidence on both sides, and observed the attitude and demeanor of the witnesses, while testifying, and we are unable to say that their finding was flagrantly against the weight of the evidence. Perhaps, if we had occupied the place of the jury, we might have reached a different conclusion; that fact, however, would not be sufficient to justify a reversal of this case. In a long line of decisions this court has adhered to the uniform rule that it is only where the verdict is flagrantly against the weight of the evidence that a reversal will be directed. The facts

of the case before us do not bring it within this rule, and the verdict will not be disturbed on the ground that it is not sustained by the evidence.

But it is further insisted that the instructions relating to the liability of the Seelbach Hotel Company are erroneous. In instruction No. 1 the jury were told that, if they believed from the evidence that George Wolf threw the bottle on the occasion in question, they should find for the plaintiff. Instruction No. 2 was the converse of instruction No. 1. Instruction No. 3, which is complained of by counsel for appellant, is as follows: "If the jury shall believe from the evidence that the defendant George Wolf did throw the bottle from the roof garden on the occasion in evidence referred to, and that the plaintiff was thereby injured, and if you shall further believe from the evidence that the defendant Wolf was at and prior to the time that he threw the bottle in the roof garden of the defendant Seelbach Hotel Company, and that he was intoxicated, and that his manner and behavior were such as would indicate to a man of average prudence operating the roof garden that he (Wolf) might throw a bottle or other missile from the said garden to the street below, and that these facts were known, or by the exercise of ordinary care could have been known, to the defendant Seelbach Hotel Company, or its agents, or any of them, controlling the roof garden, then it became the duty of the defendant and of its agents to remove the said Wolf from the said roof garden or otherwise control him, and that the law in that event is for the plaintiff against the said Seelbach Hotel Company." Instruction No. 4 is the converse of instruction No. 3. The question, then, is: Does instruction No. 3 present the law as applicable to the facts of this case. The first objection to the instruction is the use of the expression, "known, or by the exercise of ordinary care could have been known to the defendant Seelbach Hotel Company, or its agents, or any

of them, controlling the roof garden." Counsel for appellant insist that, in order to hold the hotel company liable, it was not necessary for them to know, that the instruction should have been confined to a belief or reasonable grounds for belief that Wolf might do the particular thing, even conceding that the jury should have been confined to the particular act. It is further insisted that the instruction is radically wrong in another respect: that the jury should not have been required to believe that the hotel company knew, or could have known by the exercise of reasonable care, that Wolf was going to throw a bottle from the room. All that was necessary was that it was perfectly apparent from his conduct that he was liable to commit a breach of the peace, or that he was liable to do some injury, it matters not how, or to whom. We have not been referred to a single authority upholding this position. Under the early English rule the innkeeper was not liable either for assaults committed by his servants upon a guest or upon guests by other guests. Calye's Case, 8 Coke, 32. In the recent case of Rommel v. Schambacher, 120 Pa. 579, 11 Atl. 779, 6 Am. St. Rep. 732, the innkeeper was held liable for assaults by other guests. In 22 Cyc. 1094, the rule is thus stated: "The innkeeper is not generally liable to strangers for the acts of his guests; but may be made so by statute."

Recognizing the rule above laid down, let us see whether or not the instruction complained of covered the law of the case. There might, of course, arise a case where the conduct persisted in by the guest was such as would probably result in injury to others. The guest might show by his conduct that he was violent; that, unless restrained, he would injure some one. In such a case it might not be necessary that the innkeeper should know that the guest was going to commit the particular act resulting in the injury, for instance, that he was going to cut another with a knife, or shoot another with a pistol.

The reasonable probability that such an act would result from the guest's previous conduct might. be sufficient to impose upon the innkeeper the duty of exercising ordinary care to restrain the guest or pre- vent the injury. No such case, however, is presented by this record. There is absolutely no proof to the effect that Wolf (conceding it was he who threw the bottle) was boisterous or violent in his conduct. There is no evidence that he threatened or assaulted any one. There is nothing from which it could be reason- ably inferred that he would throw the bottle in ques- tion. The throwing of a bottle of beer from a roof garden is an unusual ocurrence. There was nothing in Wolf's previous demeanor that would justify the conclusion that he would injure some one either by throwing a bottle of beer or in any other manner. Even if there could arise a case where the law should be given as insisted by counsel for appellant, such a rule would not be applicable to the facts of this case. The liability of the hotel company was based upon the proposition that if Wolf was intoxicated and his manner of behaving was such as to indicate to a man of average prudence operating the roof gar- den that he might throw a bottle or missile to the street below, and that these facts were known, or by the exercise of ordinary care could have been known, by the hotel company, or its agents controlling the garden, it became the duty of the hotel company or its agents to remove Wolf therefrom, or otherwise control him. It was not error to use the expression "known, or by the exercise of ordinary care could have known," instead of "believed, or had reasonable grounds to believe." Negligence is ordinarily predi- cated in terms of knowledge, and liability attaches only in case the defendant knows, or by the exercise of ordinary care could know. Besides, the fact must be remembered that ordinarily innkeepers have no control over their guests. It is only when they know, or by the exercise of ordinary care could know, that

the guest's conduct is such that injury will naturally result to others, that they have the right to eject the guest, or take precautions to control his conduct. There being no evidence tending to show that the roof garden was a nuisance, and nothing in Wolf's previous conduct from which the hotel company or its agents might have known that he would injure some one walking on the street, it was not error to confine the inquiry of the jury to the question whether or not the hotel company or its agents knew, or by the exercise of ordinary care could have known, that Wolf's manner and behavior were such as to indicate to a man of average prudence operating the roof garden that Wolf might throw a bottle or other missile from the garden into the street below.

For the reasons given, the judgment is affirmed.